**Daniel EDELIST, an individual, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**MBNA AMERICA BANK, Defendant.**

**Civ.A. No. 01C–01–195–JOH.**

Superior Court of Delaware, New Castle County.

Argued: March 16, 2001.

Submitted: April 30, 2001.

Decided: Aug. 9, 2001.

---

John S. Spadaro, and Jonathan L. Parshall, of Murphy, Spadaro & Landon, Wilmington, and Gretchen Carpenter (argued) of Strange & Hoey, Los Angeles, CA, for plaintiff.

Kathleen M. Jennings, of Oberly & Jennings, P.A., Wilmington, and Richard C. Pepperman, II (argued) of Sullivan & Cromwell, New York City, for defendant.

## OPINION

HERLIHY, Judge.

Plaintiff Daniel Edelist has filed an action on his own behalf and a putative class action against MBNA America Bank. The claims arise out of his credit card account and the accounts of others he alleges are similarly situated. He seeks damages for himself and the class for alleged breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent or negligent misrepresentation and violation of the Delaware Consumer Fraud Act.

MBNA has moved to stay or dismiss his action on the strength of an arbitration provision which it claims forms part of his credit card agreement. The arbitration provision was part of an amendment sent out to Edelist and others after they entered into their initial agreements. It provides for arbitration of all disputes and that there will be no jury trial concerning these disputes. Each credit cardholder was given the opportunity to opt out of the proposed amendment. Edelist did not exercise that option.

As a general rule, Delaware law permits credit card agreements to be unilaterally amended as was done here. It is an issue of first impression, however, whether Delaware law permits the right to jury trial to be amended in the manner done here. Edelist, however, is a California resident. California law will not enforce such unilateral amendments and will not recognize the waiver of jury trial rights in the way done here.

The issues, therefore, are which state's law applies, California or Delaware. If Delaware law applies, the issues are whether MBNA properly amended Edelist's credit card agreement and if the waiver of jury trial is valid.

The Court holds Delaware law applies. MBNA properly amended Edelist's original agreement and his waiver of jury trial is valid.

## FACTUAL BACKGROUND

In his complaint, Edelist alleges he is a MBNA credit cardholder. He does not attach to his complaint a copy of his credit card agreement nor say when he opened the account.[1] He does not even state in his complaint that he lives in California. He has not filed any other pleading indicating a residence address.[2]

In its moving papers, MBNA attached an affidavit from Deborah Fisher, Senior Vice President of MBNA, giving Edelist's Los Angeles address. That affidavit does not specify when Edelist opened his credit card account. She attached copies of the original credit card agreement concerning Edelist's account. She avers that the copy of the agreement she attached to her affidavit is a "true and correct copy of the [one] governing his account."[3]

Edelist's reply to MBNA's motion argues, however, that there is no proof what Fisher provided is the actual agreement between the parties. As noted earlier, Edelist did not attach a copy of the agreement to his complaint. He has not sup-

---

1. In footnote 1 in his opposition to MBNA's motion, he says it was opened in 1997.

2. Edelist's reply memorandum, however, lists California counsel as "of counsel" and one that has been admitted *pro hac vice.*

3. Fisher Affidavit (February 28, 2001) at ¶ 3.

plied an affidavit denying the accuracy or completeness of the documents attached to Fisher's affidavit nor supplied in his response a copy of his agreement. He merely asserts there is no proof that what Fisher provided is a copy of his agreement with MBNA. The Court finds Fisher's affidavit sufficient to show the agreement. It rejects Edelist's bare assertions.[4]

Pertinent portions of the original agreement provided:

### GOVERNING LAW

This Agreement is made in Delaware. It is governed by the laws of the State of Delaware, without regard to its conflicts of laws principles, and by any applicable federal laws. You agree that any litigation brought by you against us regarding this account or this Agreement shall be brought in a court located in the State of Delaware.

If any part of this Agreement is found to be invalid, the rest remains effective. Our failure or delay in exercising any of our rights under this Agreement does not mean that we are unable to exercise those rights later.

All persons who initially or subsequently request, accept or use the account are individually and together responsible for any outstanding balance. If two or more persons are responsible to pay any outstanding balance, we may refuse to release any of them from liability until all of the unexpired cards outstanding under the account have been returned to us and the balance is paid in full.

You must return all credit cards to us on request.[5]

### AMENDMENTS

We may amend this Agreement by complying with the applicable notification requirements of federal law and the laws of the State of Delaware. If you fail to accept any amendment to this Agreement in the manner provided in such amendment, we may terminate your rights to receive credit and may ask you to return all credit devices as a condition of your rejection. The amended Agreement (including any higher rate or other higher charges or fees) will apply to the entire unpaid balance, including the balance existing before the amendment became effective. We may replace your credit card with another card at any time.[6]

Despite the absence of a more specific date the original account was opened,[7] the parties agree the arbitration provision at issue was in a subsequent document. Fisher states that on or about December 20, 1999, MBNA sent Edelist and other credit cardholders the arbitration provision.[8] Edelist does not claim he never received it. Obviously, he contends, "[a] waiver of fundamental rights, such as a right to trial by jury, cannot be based on pure speculation as to what an agreement actually provided for."[9] This statement does not even rise to the level of a bare assertion and is unacceptable to challenging the authenticity of what Fisher supplied.

**4.** See E.K. Geyser Co. v. Blue Rock Shopping Center, Inc., Del.Super., 229 A.2d 499, 501 (1967).

**5.** Agreement at 8. The Court has not been told whether the font and size print of the Agreement are similar to or differ from the print on the attachment to the affidavit.

**6.** Id. at 6.

**7.** In footnote 1 in his reply memorandum, Edelist says it was in 1997. No further date is supplied.

**8.** Fisher Affidavit at ¶ 4.

**9.** Edelist reply memorandum at 2, n. 1.

The 1999 amendments contained several items. The most extensive portions covered arbitration and provided:

**Arbitration:** Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration section or the validity of the entire Agreement or any prior Agreement shall be resolved by binding arbitration." [sic] The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, *www.arb-forum.com* or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone 1-800-474-2371. If the NAF is unable or unwilling to act as arbitrator, we may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. In no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the claim had been resolved in a state court with jurisdiction. Any arbitration hearing at which you appear will take place within the federal judicial district that includes you billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator shall follow existing substantive law to the extent consistent with the FAS and applicable statues of limitations and shall honor any claims or privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action or as a private attorney general. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim. This Arbitration Section does not apply to Claims between you and us previously asserted in any lawsuits filed before the date this Arbitration Section becomes effective. However, this Arbitration Section applies to all Claims now in existence or that may arise in the future.

This Arbitration Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration Section, "we" and "us" means MBNA America Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of the officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus,

merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you asset against us. Also, for the purposes of this Arbitration Section, "you" or "yours" shall mean any person or entity approved by us to use the account, including but not limited to all persons or entities contractually obligated on the Account and all authorized users of the account.

If any part of this Arbitration Section is found to be invalid or unenforceable under any law or statute consistent with the FAA, the remainder of this Arbitration Section shall be enforceable without regard to such invalidity or unenforceability.

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

*If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is not sufficient to telephone us. Send this notice only to the address in this paragraph; do not send it with a payment.* **We must receive your letter at the above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.**[10]

Fisher further states in her affidavit that this amendment was sent to Edelist to an address in Los Angeles.[11] She also states this is the same address where his account statements were sent. None ever came back.[12] Fisher indicates MBNA kept a separate file of credit cardholders who exercised their opt-out privilege.[13] There is no record Edelist exercised this privilege.[14] Further, there is no record Edelist's amendment notice was returned as undeliverable. Edelist has offered no affidavit he did not receive the arbitration mailing. Nor is there an assertion in his response to MBNA's motion that he never received it. The Court is satisfied he received it.[15]

## DISCUSSION

### Conflicts of Law

The threshold issue in this case is whether this Court is to apply Delaware or California law to determine the validity of the arbitration amendment. The California case of *Badie v. Bank of America*[16] makes it clear that unilateral amendments sent with billing statements ("bill stuffers" it calls them) are not valid. When such amendments incorporate an arbitration provision and only provide the cardholder with an op-out, that is insufficient to valid-

---

**10.** Amendment to Agreement at 1–2. Bold and italics in original.

**11.** Fisher Affidavit at ¶ 9.

**12.** *Id.*

**13.** *Id.* at ¶ 7.

**14.** *Id.* at ¶ 8.

**15.** *Marsh v. First USA Bank*, N.D.Tex., 103 F.Supp.2d 909, 918 (2000).

**16.** 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (1998).

ly waive the right to jury trial.[17] But, Edelist's recent invocation of California law is, to put it mildly, curious. In his complaint, he unequivocally states:

## APPLICABLE LAW

6. Representative Plaintiff Daniel Edelist is an individual who has a credit card issued by Defendant MBNA. Plaintiff's credit card agreement with MBNA provides that it is governed by federal law and the law of Delaware. Thus, Plaintiff's claims for Breach of Contract, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraudulent or Negligent Misrepresentation and Consumer Fraud arise under Delaware law.[18]

When confronted with this anomaly at oral argument, Edelist contended Delaware law applies only to his substantive claims. Otherwise, he says, California law applies to this issue (and perhaps all his claims).[19] While the Court could easily say Edelist cannot have it both ways and end the discussion there, prudence dictates the Court engage in a conflicts of law analysis.

The original credit card agreement between Edelist and MBNA provided that "[i]t is governed by the laws of the State of Delaware, without regard to its conflicts of laws principles and by any applicable federal laws." [20] The phrase "without regard to its conflicts of laws principles" may refer to a special Delaware statute on choice of law which provides:

The parties to any contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflict of laws, or that the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties if the parties, either as provided by law or in the manner specified in such writing are, (i) subject to the jurisdiction of the courts of, or arbitration in, Delaware and (ii) may be served with legal process. The foregoing shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State.[21]

■ But, this provision is inapplicable to contracts involving less than $100,000.[22] Edelist's putative class claim seeks damages in excess of $100,000, but his individual action does not. Accordingly, this statutory choice of law provision in inapplicable. Even though inapplicable, the parties did chose Delaware law to apply to their contract. Despite that choice, however, prudence again suggests the Court conduct a conflicts of law analysis.

■ The starting point for that analysis is that Delaware has adopted the most significant relationship approach to conflicts of law questions.[23]

---

17. *Id.* at 284–85; accord *Long v. Fidelity Water Systems Inc.,* N.D.Cal., C.A.No. C–97–20118, 2000 WL 989914, Whyte, J. (May 26, 2000).

18. Complaint at 4.

19. Edelist reply memorandum at 2, n. 2.

20. Agreement at 8.

21. *6 Del.C.* § 2708(a).

22. *6 Del.C.* § 2708(c).

23. *Travelers Indem. Co. v. Lake,* Del.Supr., 594 A.2d 38, 48 (1991) (adopting restatement rule for torts); *Cannon v. Dorr–Oliver, Inc.,* Del. Supr., 394 A.2d 1160, 1166 (1978) (adopting restatement rule for contracts).

In the absence of an effective choice of law by the parties, § 188 of the Restatement [of Conflicts] provides that "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Those principles include: "(a) The needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (3) the basic policies underlying that particular field of law, (f) certainty, predictability and uniformity of result and (g) ease in the determination and application of the law to be applied." [24]

"The test attempts to identify that state having the most significant relationship to the specific transaction and the parties to that transaction by considering the following contacts: (a) the place of contracting; (b) the place of negotiation of contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." [25]

A court should not simply perform a quantitative analysis by adding up which forum has more contacts, but should apply a quantitative analysis, considering the contracts' relative importance to the issue at hand.[26]

■ Applying those principles to this case, Fisher's affidavit says Edelist is a California resident. Beyond that, he makes assertions in a footnote [27] about "acceptance" of the credit card agreement in California and payments being made there. While not presented in appropriate affidavit form, for this analysis, the Court will accept Edelist's assertions.

Along with Edelist's residence, the other factors are that MBNA is incorporated in Delaware and has its principle place of business in this state. It deals with credit cardholders all over the United States and it would clearly desire as much uniformity as possible in the interpretation of its credit card agreements and disputes. MBNA chose Delaware, in large part, for its laws concerning credit card accounts. Delaware, in turn, has more than a passing interest in the validity and enforcement of choice of law provisions such as this one.

■ It is to be noted that this particular agreement is more than a choice of Delaware as a forum to resolve disputes. It also specifically provides it is to be governed by the laws of this state. This choice, when Edelist filed his complaint, was satisfactory to him but only later was something he sought to avoid. "Delaware courts will honor specific choice of law provisions so long as there is some material linkage between the chosen jurisdiction and the transaction." [28] The parties also

---

**24.** *Pfizer, Inc. v. Advanced Monobloc Corp.,* Del.Super., C.A. No. 97C–04–037, 1999 WL 743927, Quillen, J. (Sept. 2, 1999) at 21, n. 33.

**25.** *Sequa Corp. v. Aetna Cas. and Sur.,* Del.Super., C.A.No. 89C–AP–1, 1992 WL 147994, Herlihy, J. (May 21, 1992) at 2.

**26.** *GTE Mobilnet Inc, v. Nehalem Cellular, Inc.,* Del.Ch., C.A.No. 13072, 1994 WL 116194, Chandler, V.C. (March 17, 1994) (citing *Travelers Indem. Co. v. Lake,* Del.Supr., 594 A.2d 38, 48 (1991)).

**27.** Edelist reply memorandum at 2, n. 2.

**28.** *Annan v. Wilmington Trust Co.,* Del.Supr., 559 A.2d 1289, 1293 (1989); *Suburban Trust*

included a provision providing that federal law and the laws of Delaware should govern any amendment to the credit card agreement. The result of this conflicts of law analysis is that Delaware law applies.

### Validity of Arbitration Amendment

Applying Delaware law, therefore, the issues are whether the amendment was validly made and, if so, whether it is enforceable. In the parties' original agreement, MBNA reserved the right to amend consistent with federal[29] and Delaware law. There is a specific Delaware statute authorizing amendments to credit card agreements:

> Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to plan benefits or features, the rate or rates of periodic interest, the manner of calculating periodic interest or outstanding unpaid indebtedness, variable schedules or formulas, interest charges, fees, collateral requirements, methods for obtaining or repaying extension of credit, attorney's fees, plan termination, the manner for amending the terms of the agreement, arbitration or other alternative dispute resolution mechanisms, or other matters of any kind whatsoever. Unless the agreement governing a re-

volving credit plan otherwise expressly provides, any amendment may, on and after the date upon which it becomes effective as to a particular borrower, apply to all then outstanding unpaid indebtedness in the borrowers account under the plan, including any such indebtedness that arose prior to the effective date of the amendment. An agreement governing a revolving credit plan may be amended pursuant to this section regardless of whether the plan is active or inactive or whether additional borrowings are available thereunder. Any amendment that does not increase the rate or rates of periodic interest charged by a bank to a borrower under § 943 or § 944 of this title may become effective as determined by the bank, subject to compliance by the bank with any applicable notice requirements under the Truth in Lending Act (15 U.S.C. §§ 1601 et seq.), and the regulations promulgated thereunder, as in effect from time to time. Any notice of an amendment sent by the bank may be included in the same envelop with a periodic statement as part of the periodic statement or in other materials sent to the borrower.[30]

■ To amend credit card agreements regarding changing interest rates, banks such as MBNA must follow certain procedures.[31] These procedures provide for a notice to the credit cardholder of the proposed amendment(s) and opting out by sending notice to the bank of the rejection of the amendment. In short, Delaware statutory law controlling Edelist's account permits MBNA to unilaterally amend

---

and Savings Bank v. University of Delaware, D.Del., 910 F.Supp. 1009 (1995).

**29.** Edelist does not contend any federal law was violated in the amendment process.

**30.** 5 Del.C. § 952(a).

**31.** 5 Del.C. § 952(b)(1), (b)(2).

agreements by notice and an opt-out provision.

According to Fisher's affidavit, MBNA sent notice of the amendment, which covered finance charges and the arbitration provision, on or about December 20, 1999. The proposed amendment was introduced in this fashion:

> These Amendments change the terms of your Credit Card Agreement. Please read this document carefully and keep it with your Credit Card Agreement. Except for these Amendments, the terms of your Credit Card Agreement continue in full force and effect.[32]

The proposed arbitration amendment was introduced as follows:

> As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration Section will become effective on February 1, 2000. The Arbitration Section reads:[33]

The opt-out provision reads as follows:

> *If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is* not sufficient to telephone use. Send this notice only to the address in this paragraph; do not send it with a payment. **We must receive your letter at the above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.**[34]

▆▆ Edelist, of course, claims he never received the notice of the proposed amendment. His claim is a mere assertion of counsel. That is contrasted with MBNA's affidavit from Fisher. The Court has already said MBNA has shown enough to establish that Edelist (1) was sent and received notice of the amendment and (2) did not exercise the opt-out provision.

MBNA, therefore, followed the statutory scheme for amending credit card agreements. By doing so and by Edelist's failure to opt out, his credit card agreement was properly amended under Delaware law to include a provision requiring all disputes to be arbitrated.

A similar result was reached recently in *Lloyd v. MBNA America Bank, N.A.*[35] There, the District Court for Delaware upheld the same arbitration amendment as here. The substantive claims alleged violations of the federal Truth in Lending Act,[36] consumer fraud and breach of contract. Similar claims were made challenging the validity and enforceability of the arbitration amendment. The District Court rejected these claims.

A more in-depth analysis of the interplay of Delaware law and an arbitration amendment is found in *Marsh v. First USA Bank.*[37] The *Marsh* court found the amendment to have been made in conform-

---

**32.** Amendment to Agreement at 1.

**33.** *Id.*

**34.** *Id.* at 2. Bold and italics in original.

**35.** D.Del., C.A. No. 00–109–SLR, Robinson, C.J. (February 22, 2001).

**36.** 15 *U.S.C.*, §§ 1601, *et seq.*

**37.** 103 F.Supp.2d 909.

ity with Delaware law.[38] The statute which the court cited and upon which it relied is the same as applies to this case. *Lloyd* and *Marsh* are in accord with other courts which have considered and validated unilateral amendment procedures as used here.[39] In short, Delaware's statutory scheme permitting unilateral amendment with opt-out availability is an acceptable means of amending a credit card agreement.[40] Further, since MBNA followed that process and Edelist did not exercise his ability to reject the amendment, the original agreement was amended to require arbitration of disputes between them.

But, Edelist's challenge to the arbitration amendment does not end there. Citing *Badie* again, he claims the amendment is unenforceable since it was not a knowing and intelligent waiver of his right to a jury trial. The *Badie* court found the arbitration clause before it to be unenforceable for a number of reasons. One, credit card agreements being contracts of adhesion, any ambiguous terms were to be construed against the drafter. It found the language in the original contract to limit the ability to amend. The court found the original agreement's language to limit possible amendments to matters involving financial terms. It held that ability to amend did not extend as far as adding a provision covering arbitration by "merely" sending

out notice.[41] As quoted earlier, Delaware statutory law, however, expressly authorizes amendment by sending notice.[42] Two, the *Badie* court was concerned that the amendment was put in with the monthly bill, a "bill stuffer;" a "bill stuffer" it found to be unclear.[43]

The *Badie* court was very concerned about the bill stuffer arbitration amendment because it resulted in waiver of the right to a jury trial. While the complete text of the language which the Court found to be an ineffective waiver is not quoted in full, it held as to waiver:

> We find no unambiguous and unequivocal waiver of the right to a jury trial either in the language of the change of terms provision or in any other part of the original account agreements. Nor do we find an unambiguous and unequivocal waiver in any customer's failure to close or stop using an account immediately after receiving the "bill stuffers" because, as even the trial court concluded, the notice contained in the "bill stuffer" was "not designed to achieve 'knowing consent'" to the ADR provision.[44]

The court quotes, however, enough from the offending language to an extent that this Court can say the amendment in *Badie* and the one here are substantively different.[45] The effect on Edelist's right to

---

**38.** *Id.* at 929.

**39.** *See, e.g., South Trust Bank v. Williams,* Ala., 775 So.2d 184 (2000); *Herrington v. Union Planters Bank, N.A.,* S.D.Miss., 113 F.Supp.2d 1026 (2000).

**40.** *See also Grasso v. First U.S.A. Bank,* Del.Super., 713 A.2d 304 (1998).

**41.** *Id.* at 289.

**42.** *Supra* at 1257.

**43.** *Id.* at 290–91. Compare the court's speculative analysis of the effect of bill stuffers

providing notice to the evidence that such mailings provide greater likelihood that they will be read which is found in *Marsh,* 103 F.Supp.2d at 919.

**44.** *Id.* at 290.

**45.** As noted earlier, the *Badie* court was bothered that a waiver of an important right would be buried in a bill stuffer. Fisher's affidavit in this case does not indicate whether the mailing to Edelist was sent as part of his bill or in a separate mailing. At oral argument, however, MBNA represented that the amendment was sent in a separate mail-

a jury trial by agreeing to arbitration is clearly and repeatedly set out:

As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims.

\* \* \*

No Claim submitted to arbitration is heard by a jury and no Claim may be brought as a class action or as a private attorney general.

\* \* \*

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.[46]

This Court is satisfied that Edelist was forthrightly and repeatedly informed that by agreeing to arbitration, he was surrendering whatever right to a jury trial he may have had. While not explicitly holding so, the *Badie* court believed a waiver could not be effective through an opt-out process. It seems to say such a waiver had to be effective only if the cardholder sent back a document stating the right to jury trial was being waived.[47] Otherwise the arbitration provision is unenforceable. It is, of course, unknown whether the waiver language in the amendment at issue here would meet the waiver standards in *Badie*. To the extent the two amendments can be compared on this issue, there is a strong likelihood that this amendment would pass muster even under *Badie*.

▮▮▮ But, this Court need not decide that. Delaware law is being applied. That law recognizes that arbitration agreements, even in adhesion contracts, can effectively waive the right to a jury trial.[48] The *Graham* case involved an arbitration provision in an insurance contract. But *Lloyd*[49] involved a credit card agreement and the very amendment at issue here. The *Lloyd* court found the waiver effective.[50]

Edelist was fully informed of his right to a jury trial and that by agreeing to arbitration, he was giving up that right.[51] Edelist's waiver was effective.

### Class Actions

Finally, Edelist urges this Court to hold unenforceable "unconscionable provisions" in the arbitration amendment. The only specific provision he points to is the one preventing arbitration of disputes on a

---

ing. The Court will not accept that assertion. *See Martin v. Nealis Motors,* Del.Supr., 247 A.2d 831, 833 (1968). For analysis, the Court will assume the notice to Edelist with the proposed amendment was included with his monthly bill.

**46.** Amendment to Agreement at 1, 2. Capitalized in original.

**47.** *Badie,* 79 Cal.Rptr.2d at 289–90.

**48.** *Graham v. State Farm Mut. Auto. Ins. Co.,* Del.Supr., 565 A.2d 908 (1989).

**49.** *Supra,* at 16–17.

**50.** *Id.* at 8. Accord interpreting Delaware law, *Marsh,* 103 F.Supp.2d 909; *see also, Bank One v. Coates,* S.D.Miss., 125 F.Supp.2d 819 (2001).

**51.** Coincidentally, he has exercised his right to ask for a jury of less than 12. His complaint states, "Trial By Jury Demanded." This waives a jury of 12 and results in a jury of six. Superior Court Civil Rule 38(d).

class-wide basis. He does not dispute, however, the clarity of the language barring bringing class actions in arbitration.

In *Lloyd* and in *Sagal v. First USA Bank, N.A.*,[52] the District Court for Delaware upheld the bar on class actions in arbitration agreements. Both cases, however, concerned that bar in light of the federal Truth in Lending Act which provided for class actions. Because the arbitration clauses were controlling and enforceable, Truth in Lending Act plaintiff credit cardholders could not arbitrate their proposed class actions.[53]

■ Edelist has not brought a Truth in Lending Act action. He has not implicated any federal law claim. But, the result in *Lloyd* and *Sagal*, nonetheless, are equally applicable to his putative right under Delaware law to bring a class action.[54] The surrender of that class action right was clearly articulated in the arbitration amendment. The Court finds nothing unconscionable about it and finds the bar on class actions enforceable.

### CONCLUSION

MBNA argued that the arbitration provision was enforceable. The Court has found that, in its entirety, it is. The question is whether this case should be stayed or dismissed. The Court finds dismissal without prejudice to be appropriate. For the reasons stated herein, defendant MBNA America Bank's motion to stay is **DENIED**, but its motion to dismiss without prejudice is **GRANTED**.

---

**52.** D.Del., 69 F.Supp.2d 627 (1999).

**53.** Accord *Marsh,* 103 F.Supp.2d 909; *Randolf v. Green Tree Financial Corp.-Alabama,* C.A.11, 244 F.3d 814 (2001).

**54.** Superior Court Civil Rule 23.