Jason LLOYD, an individual, on behalf of himself and all others similarly situated, Appellant,

v.

MBNA AMERICA BANK, N.A.; Does 1 Thru 100, Inclusive.

No. 01–1752.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to LAR 34.1(a) Dec. 4, 2001.

Opinion Filed Jan. 7, 2002.

Before ALITO, RENDELL, and AMBRO, Circuit Judges.

## MEMORANDUM OPINION

AMBRO, Circuit Judge.

In this appeal we decide whether the District Court properly granted the motion to dismiss of Appellee MBNA America Bank, N.A. ("MBNA"). We affirm.

## I.

The facts of this case are known to both parties and were recited in the District Court's well reasoned memorandum opinion and order. We will not repeat them here. Jason Lloyd brought an action under the Truth in Lending Act ("TILA") on behalf of himself and those similarly situated alleging that payments were not credited on the date they were received by MBNA. It moved to dismiss or in the alternative to stay the action in favor of individual binding arbitration pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, based on an arbitration provision in Lloyd's credit agreement. The District Court granted MBNA's motion to dismiss in favor of binding arbitration, and Lloyd appealed.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a grant of a motion to dismiss in favor of binding arbitration is plenary. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir.1999).

## II.

The presence of an enforceable arbitration provision generally means that a court

does not possess jurisdiction over the case and must refer it to arbitration pursuant to § 4 of the FAA. *Id.* at 179. The question we must answer is whether the arbitration provision present in this case is enforceable. Lloyd offers a series of objections, each of which we will address in turn.

■ First Lloyd posits that California, not Delaware, law governs this case. In his complaint before the District Court, however, he maintained that Delaware law governed; in fact, he asserted a claim for relief under Delaware law. He maintains, however, that the issue of choice of law is not waivable, citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 646 (3d Cir.1958). We note that Parkway Baking applied Pennsylvania, rather than Delaware, choice of law analysis. Furthermore, the party objecting to the application of Pennsylvania law in that case merely failed to raise the issue in the trial court. Lloyd, in contrast, affirmatively asserted at trial that the law of Delaware governed.

It was logical for Lloyd to argue before the District Court that Delaware law applied, given that the credit agreement specified that it was governed by that law. While 6 Del. C. § 2708 permits parties to agree that their contracts be governed by Delaware law without regard to conflicts of law principles, this provision does not apply to contracts "involving less than $100,000." 6 Del. C. § 2708(a), (c). We therefore conduct a conflicts of law analysis.

That analysis applies the "most significant relationship" test to determine which state's law to apply. *Edelist v. MBNA America Bank*, C.A. No. 01–C–01–195–JOH, —— A.2d ——, ——, 2001 WL 946500, at *5 (Del.Super. Aug. 9, 2001). "Delaware courts will honor specific choice of law provisions so long as there is some material linkage between the chosen juris-

diction and the transaction." *Id.* (citations omitted). Because that linkage exists, we conclude that the choice of Delaware law is enforceable. Moreover, what the purported nationwide class shares in common is a relationship with MBNA. Because Delaware is MBNA's state of incorporation and principal place of business, the forum with the most significant contacts with the class is Delaware, not California. This is recognized by the agreement itself, which provided that the place of contracting was Delaware.

■ Having determined that Delaware law governs, we proceed to Lloyd's other objections. The first is that the agreement is unconscionable because it purports to bar classwide relief. Again, Lloyd did not raise this argument in the District Court, arguing instead that the agreement was unconscionable as an adhesion contract. On the merits this argument fails because of our holding in *Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000). There we held that the right to a class action under the TILA was "merely a procedural one, arising under Fed.R.Civ.P. 23, that may be waived by agreeing to an arbitration clause." *Id.* at 369. If the right to a class action under the TILA is "merely procedural," and "may be waived," an arbitration agreement barring classwide relief for claims brought under the TILA is not unconscionable.

■ Next Lloyd argues that MBNA could not "retroactively amend" the credit agreement to apply to claims in existence at the time of the effective date of the amendment. The credit agreement provided that MBNA could amend the agreement by complying with the notification requirements of Delaware law, which permits the addition of terms providing for arbitration. 5 Del. C. § 952(a). We do not agree with Lloyd that MBNA failed to comply with the provision that "[a]ny no-

tice of an amendment sent by the bank may be included in the same envelope with a periodic statement or as part of the periodic statement or in other materials sent to the borrower." *Id.* The use of the word "may" ipso facto makes this provision not mandatory. Thus MBNA's separate mailing of the notice of amendment complied with Delaware's notice requirements.

█ As the District Court held, courts apply a "presumption of arbitrability" when construing the scope of arbitration clauses. Mem. Op. at 7 (citing *Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir. 2000)). The arbitration clause in this case covered "[a]ny claim or dispute ... by either [Lloyd] or [MBNA] ... arising from or relating in any way to this Agreement." Lloyd did not exercise the opt-out right that the notice of amendment provided. He is therefore bound by the terms of the amended agreement.

█ Finally, Lloyd argues that the arbitration provision is unenforceable because it does not ensure that he can vindicate his rights under the TILA. He contends that, because his claim will likely amount to less than one hundred dollars the fact that he may have to pay for arbitration fees, although capped at the level of court costs in a state court with jurisdiction, effectively precludes the pursuit of a claim. As the District Court observed, the plaintiff bears the burden of proving that the claim is not suited to arbitration. Mem. Op. at 5–6 (citing *Green Tree Fin. Corp.-Al. v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000)). MBNA has agreed to advance the arbitration costs if requested, and the arbitrator will determine which party will ultimately pay the fees. It may be true that, as Lloyd argues, absent the arbitration provision an attorney might represent a class on a contingent fee basis, and that no attorney would bring an arbitration claim for such a small sum as one hundred dollars for a

contingent fee. But Johnson makes clear that the TILA does not provide an unwaivable right to a class action. 225 F.3d at 369. Lloyd may not attempt to end-run that holding by couching his claim in terms of unvindicated rights.

For the foregoing reasons, the judgment of the District Court granting MBNA's motion to dismiss is affirmed.