# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MTA CANADA ROYALTY CORP., as successor-in-interest to 1570926 ALBERTA LTD., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.: N19C-11-228 AML CCLD |
| COMPANIA MINERA PANGEA, S.A. DE C.V., | ) ) ) ) | |
| Defendant. | ) ) | |

Submitted: June 29, 2020
Decided: September 16, 2020

**Upon Defendant's Motion to Dismiss: GRANTED**

## MEMORANDUM OPINION

Peter L. Frattarelli, Esquire, and Kevin F. Shaw, Esquire, of ARCHER & GREINER, P.C., Wilmington, Delaware, *Attorneys for Plaintiff*.

Robert A. Penza, Esquire, and Christina B. Vavala, Esquire, of POLSINELLI PC, Wilmington, Delaware, *Attorneys for Defendant*.

R. Montgomery Donaldson, Esquire, of MONTGOMERY MCCRACKEN WALKER & RHOADS LLP, Wilmington, Delaware, *Attorney for Defendant.*

**LeGROW, J.**

Buyer purchased from Seller certain mineral rights in a mine located in Mexico. The parties' agreement required Buyer to make an additional payment conditioned on the mine remaining in operation after a particular date. Before that date, Seller was merged out of existence, but Seller's successor contends Buyer owes the conditional payment to Seller's successor. Buyer argues an anti-assignment clause in the agreement prohibited Seller from assigning its rights without Buyer's prior consent.

The pending motion requires the Court to determine whether the agreement's anti-assignment clause unambiguously applies to assignments by operation of law. Buyer argues the anti-assignment clause is unambiguous, and Seller violated that clause by not obtaining Buyer's consent before engaging in a transaction where Seller's rights under the agreement were assigned or delegated by operation of law. Buyer contends Seller's successor therefore is not a party to the agreement and cannot now assert Seller's rights thereunder.

Seller's successor argues the anti-assignment clause does not apply to the merger because the agreement does not expressly include mergers within the scope of the clause. Alternatively, Seller's successor contends the anti-assignment clause is ambiguous and therefore dismissal is premature. Because the anti-assignment clause unambiguously prohibits any assignment of Seller's rights without Buyer's

consent, even assignment by operation of law pursuant to a merger, Seller's successor's claims must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the complaint and the documents incorporated by reference therein.

### The CMP-Alberta Agreement

In 2016, Defendant Compania Minera Pangea, S.A. de C.V. ("CMP") purchased certain mineral rights in the El Gallo Mine from non-party 1570926 Alberta Ltd. ("Alberta"). To that end, CMP and Alberta executed an Assignment and Assumption Agreement (the "Agreement").[1] At the time of the transaction, non-party Coeur Mining, Inc. ("Coeur") owned all Alberta's stock through Coeur's subsidiary, non-party 0986566 B.C., ULC ("BC ULC").[2] As consideration for the sale, CMP paid Alberta $5.25 million in cash at closing. Under Section 2.6 of the Agreement, CMP owed Alberta an additional $1 million payment (the "Conditional Payment") on June 30, 2018 if the El Gallo mine continued to operate on that date. The Agreement specified that "operation" would not include "activities solely pertaining to reclamation of the mine or exploration."[3]

---

[1] Def. Compania Minera Pangea, S.A. de C.V.'s Opening Br. in Supp. of its Mot. to Dismiss (hereinafter, "Def.'s Mot. to Dismiss"), Ex. A.1 Assignment and Assumption Agreement (hereinafter, the "Agreement").
[2] *See Coeur Mining, Inc. v. Compania Minera Pangea, S.A. de C.V.*, 2019 WL 3976078, at *1 (Del. Super. Aug. 22, 2019).
[3] Agreement § 2.6.

2

**Section 6.12**

Article VI of the Agreement contains several "General Provisions," including an anti-assignment clause prohibiting Alberta from assigning its rights to any other party without CMP's consent. Section 6.12 states:

> Neither this Agreement nor any of the rights, interests or obligations under this Agreement may be assigned or delegated, in whole or in part, by operation of law or otherwise, by [Alberta] without the prior written consent of each other party, and any such assignment without such prior written consent shall be null and void. The Assignee may assign this Agreement or any of the rights, interests or obligations under this Agreement in whole or in part, by operation of law or otherwise, in its sole discretion; provided that any assignee thereof assumes the obligations contained in this Agreement; provided further, that no such assignment shall limit the Assignee's obligations hereunder. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of, and be enforceable by, the parties and their respective successors and assigns.

**Prior Action and Decision**

In 2017, Coeur and BC ULC sold all Alberta's stock to a third party, but purported to "retain" Alberta's right to the Conditional Payment. On December 28, 2018, Coeur and BC ULC filed a breach of contract action in this Court after CMP refused to make the Conditional Payment (the "Prior Action"). CMP moved to dismiss the Prior Action, arguing Coeur and BC ULC (i) were not parties to the agreement and therefore had no right to enforce Alberta's rights thereunder; and (ii) could not be the assignees of Alberta's rights because Section 6.12 prohibited any assignment without CMP's consent. On August 22, 2019, the Court dismissed

3

Coeur and BC ULC's claim, concluding both entities lacked standing to enforce the Conditional Payment right.[4]  This Court held Coeur and BC ULC did not have a right to the Conditional Payment by virtue of their former ownership of the subsidiary, and any assignment of the Conditional Payment by Alberta was void under the Agreement's anti-assignment clause.

**MTA-Alberta Amalgamation**

On June 26 and 28, 2017, Alberta was "continued" as two differently named companies.[5]  Shortly thereafter, on July 1, 2017, Alberta and Global Royalty Corp. ("Global") entered into an amalgamation transaction (the "Amalgamation"),[6] with Global as the surviving entity.  On July 5, 2017, Global changed its name to MTA Canada Royalty Corp. ("MTA").  MTA concedes the Amalgamation was equivalent to a merger under Delaware law.[7]

**Procedural History**

On November 22, 2019, after this Court dismissed the Prior Action, MTA filed this breach of contract claim based on CMP's failure to pay MTA the

---

[4] *Coeur Mining, Inc.*, 2019 WL 3976078.

[5] For the sake of clarity, this Opinion refers to these entities as "Alberta."  The actual entities were 1570926 Alberta Ltd. (June 26, 2017) and 1124898 B.C. Ltd. (June 28, 2017). These transactions appear to be formalities under Canadian law, *i.e.* name changes or domiciling events that did not result in any transfer of Alberta's contractual rights.  Def.'s Mot. to Dismiss 5; Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss (hereinafter, "Pl.'s Answering Br.") 8.

[6] Def.'s Mot. to Dismiss, Ex. A.6 Certificate of Amalgamation; *id*., Ex. A.7 Amalgamation Application.

[7] Pl.'s Answering Br. 11, n.2.

4

Conditional Payment. On February 12, 2020, CMP filed a motion to dismiss the complaint for failure to state a claim. The parties briefed and argued that motion.

## THE PARTIES' CONTENTIONS

CMP argues MTA lacks standing to enforce the Conditional Payment right under the Agreement and the complaint therefore must be dismissed. It is undisputed that the Amalgamation – the merger of Alberta and Global – resulted in an assignment or delegation of Alberta's contract rights by operation of law. CMP contends that under the anti-assignment clause, Alberta was required to obtain CMP's written consent before engaging in a transaction where Alberta's rights under the Agreement were assigned or delegated, whether by operation of law or otherwise. Alberta's failure to do so violated the anti-assignment clause, and CMP asserts MTA therefore is not a party to the Agreement and cannot now assert Alberta's rights thereunder.

MTA maintains the only real issue in this case is whether the Conditional Payment is owed under the Agreement. MTA argues the anti-assignment clause does not extend to the Amalgamation because the Agreement does not expressly include mergers or amalgamations within Section 6.12's scope, and CMP did not suffer any unreasonable risk of harm as a result of the merger. MTA alternatively argues the anti-assignment clause is ambiguous such that CMP's motion to dismiss must be denied so the parties may pursue discovery.

5

## ANALYSIS

On a motion to dismiss, the Court must determine whether the plaintiff "may recover under any reasonably conceivable set of circumstances susceptible of proof[.]"[8] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would [the] plaintiff be entitled to relief."[9] When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations[10] and must draw all reasonable factual inferences in favor of the non-moving party.[11]

Delaware courts enforce contractual choice of law provisions where there is a material connection between the chosen jurisdiction and the transaction.[12] Section 6.10 provides that "[t]his Agreement and all disputes or controversies arising out of or relating to this Agreement or the transactions contemplated hereby shall be governed by, and construed in accordance with, the internal laws of the State of Delaware[.]"[13] Both parties agree Delaware law applies to this dispute.

---

[8] *Holmes v. D'Elia*, 2015 WL 8480150, at *2 (Del. Dec. 8, 2015) (quoting *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[9] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960).

[10] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[11] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del. 1998)).

[12] *Edelist v. MBNA America Bank*, 790 A.2d 1249, 1256 (Del. 2001).

[13] Agreement § 6.10.

**A.** **Section 6.12 unambiguously prohibits assignment of Alberta's rights without CMP's consent, even assignment by operation of law pursuant to a merger.**

Under Delaware law, the phrase "assignment by operation of law" within an anti-assignment provision commonly is understood to include a merger.[14] In *Koppers Coal & Transportation Co. v. United States*, the Third Circuit held that upon a corporate consolidation or merger, the constituent corporation's underlying property transfers to the resultant corporation.[15] In *DeAscanis v. Brosius-Eliason Co.*, the Delaware Supreme Court affirmed the Superior Court's holding that 8 *Del. C.* § 259 allows enforcement of a special guaranty by a successor corporation following a merger.[16]

When an anti-assignment clause includes language referencing an assignment "by operation of law," Delaware courts generally agree that the clause applies to mergers in which the contracting company is not the surviving entity. For example, in *Star Cellular Telephone Co., Inc. v. Baton Rouge CGSA, Inc.*,[17] the Court analyzed whether a clause that required prior consent to "transfer or assign" contract rights applied to a merger in which one of the contracting parties ceased to exist.

---

[14] *Tenneco Auto. Inc. v. El Paso Corp.*, 2002 WL 453930, at *2 (Del. Ch. Mar. 20, 2002) (citing *DeAscanis v. Brosius-Eliason Co.*, 1987 WL 4628, at *2 (Del. Oct. 16, 1987)) ("As a general matter in the corporate context, the phrase 'assignment by operation of law' would be commonly understood to include a merger. Indeed, the Delaware Supreme Court has equated an 'assignment by operation of law' with a merger.").

[15] 107 F.2d 706, 707-08 (3d Cir. 1939).

[16] 1987 WL 4628, at *2 (Del. Oct. 16, 1987).

[17] 1993 WL 294847 (Del. Ch. Aug. 2, 1993).

The Court held the term was ambiguous under principles of contract interpretation because "transfer," as used in that provision, could be interpreted as an affirmative assignment of rights *or* as a transfer by operation of law, as in a merger.[18] The *Star Cellular* Court explained, however, that a clause prohibiting transfers "by operation of law" would encompass and thereby prohibit a transfer by merger.[19]

The *Star Cellular* Court went on to outline a test to be employed when it is unclear whether the parties intended to include "merger" language within an anti-assignment clause:

> [W]here an antitransfer clause in a contract does not explicitly prohibit a transfer of property rights to a new entity by a merger, and where performance by the original contracting party is not a material condition and the transfer itself creates no unreasonable risks for the other contracting parties, the court should not presume that the parties intended to prohibit the merger.[20]

A decade later, the Court of Chancery in *Tenneco Auto. Inc. v. El Paso Corp.*[21] examined the enforcement of an anti-assignment clause in an insurance agreement.

---

[18] *Star Cellular Telephone Co., Inc. v. Baton Rouge CGSA, Inc.*, 1993 WL 294847, at *7 (Del. Ch. Aug. 2, 1993),

[19] *Id.* ("Because of the existing uncertainty in the law when the Agreement was drafted, the word 'transfer' did not then (and does not now) have a plain or generally prevailing meaning. It therefore must be inferred that had the parties contemplated this specific dispute and intended to prohibit all mergers under Section 13.1, they would likely have not chosen the unaided term 'transfer' to express that intent. Rather, they would have specifically addressed mergers, or they would have provided by appropriate language that 'transfer' means all transfers, including those arising by operation of law. In either case the [m]erger would fall within [the anti-assignment clause's] prohibitory scope. However, as actually written, [the anti-assignment clause] does not plainly and unambiguously include mergers within the category of prohibited 'transfer[s].'") (internal citations omitted).

[20] *Id.* at *8 (Del. Ch. Aug. 2, 1993).

[21] 2002 WL 453930 (Del. Ch. Mar. 20, 2002).

While that case was ongoing, the plaintiff merged into a successor entity through a forward triangular merger. The anti-assignment provision in the original insurance agreement stated: "[N]o party hereto may assign or delegate, whether by operation of law or otherwise, any such party's rights or obligations under or in connection with this [a]greement without the written consent of each other party hereto."[22] Although that clause included the "by operation of law" language, the Court found that inconsistencies and tension between the anti-assignment clause and the rest of the agreement rendered the assignment clause ambiguous.[23] After finding the provision ambiguous, the Court then applied the *Star Cellular* test.

*Tenneco*, however, did not alter the general rules laid down in *Star Cellular*. To the contrary, the *Tenneco* Court held that, "[a]s a general matter in the corporate context, the phrase 'assignment by operation of law' would be commonly understood to include a merger."[24] But for the ambiguity in the insurance agreement, the *Tenneco* Court held the anti-assignment provision would have "preclude[d] a transfer of rights under the [agreement] by merger absent prior consent from the other parties to the [agreement]."[25]

---

[22] *Tenneco Auto. Inc.*, 2002 WL 453930, at *1.
[23] *Id*. at *2 (Del. Ch. Mar. 20, 2002).
[24] *Id*.
[25] *Id*.

The Court of Chancery similarly acknowledged in *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH* that, absent ambiguity, mergers in which the contracting party is not the surviving entity fall within an anti-assignment provision's "by operation of law" language.[26] The *Meso Scale* Court went on to find that merging entities may avoid the effect of an anti-assignment provision by employing a "reverse triangular merger."[27] In a reverse triangular merger, the contracting party and the purchaser's subsidiary merge, with the contracting party continuing as the surviving entity.[28] The *Meso Scale* Court reasoned that such a merger does not implicate an anti-assignment provision's "by operation of law" language because the contract rights remain with the contracting party and do not pass to another entity.[29] The Amalgamation between Alberta and Global, however, was not a reverse triangular merger. Rather, Alberta became part of Global and ceased having any separate existence.[30] The question is whether this transaction was an assignment prohibited by Section 6.12.[31]

Section 6.12 required CMP's prior written consent for all assignments, including those by operation of law. Under the common understanding of the phrase

---

[26] 62 A.3d 62, 82 (Del. Ch. Feb. 22, 2013).

[27] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 83 (Del. Ch. Feb. 22, 2013).

[28] *Id.*

[29] *Id.* at 88.

[30] Pl.'s Answering Br. 8-9.

[31] CMP does not argue that the June 26 or June 28 transactions violated Section 6.12.

"by operation of law," that sentence of Section 6.12 rendered void any assignment of Alberta's Conditional Payment right through the Amalgamation.  MTA, however, argues Section 6.12's third sentence creates ambiguity by stating that successors and assignees can enforce the Agreement subject only to the second sentence and without reference to the first sentence.[32]  Under MTA's reasoning, Section 6.12 therefore can be interpreted as prohibiting third party assignments, but not what MTA refers to as "successor-type" assignments.

When interpreting contracts, Delaware courts "look[] to the language of the agreement, read as a whole, in an effort to discern the parties' collective intent."[33] The Court interprets clear and unambiguous terms according to their plain and ordinary meaning.[34]  A contract is not ambiguous "simply because the parties do not agree upon its proper construction."[35]  An ambiguity may exist where the provision in dispute is "fairly susceptible of different interpretations or may have two or more different meanings."[36]

---

[32] That is, MTA argues the third sentence begins "subject to the preceding sentence," rather than "subject to the preceding sentence**s**."

[33] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 81-82 (Del. Ch. Feb. 22, 2013) (quoting *Tenneco Automotive Inc. v. El Paso Corp.*, 2002 WL 453930, at *1 (Del. Ch. Mar. 20, 2002); *see also GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) ("[Courts] must construe the agreement as a whole, giving effect to all provisions therein.").

[34] *GMG Capital Invs., LLC*, 36 A.3d at 780.

[35] *Id.*

[36] *Id.*

MTA's interpretation is not a reasonable reading of Section 6.12 because it effectively renders meaningless the "by operation of law" language. MTA's interpretation would require the Court to conclude that the language prohibiting assignments "by operation of law" was surplusage. Delaware courts endeavor to avoid interpreting contracts in a manner that renders words or language meaningless.[37] To the contrary, a reasonable interpretation is one that gives meaning to all the terms in an agreement.[38]

MTA also argues the use of the word "successors" in Section 6.12's title creates an ambiguity because "successors" only is mentioned in the third sentence of Section 6.12, not the first sentence, which is the sentence upon which CMP relies. The Agreement, however, precludes the Court from looking to a section's title to interpret the contract. Section 6.7 states the "headings contained in this Agreement are for convenience of reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement."[39]

CMP offers the only reasonable interpretation of Section 6.12's third sentence: successors and assignees can enforce the contract if they are *valid* successors or assignees. The use of "sentence" instead of "sentences" in Section

---

[37] *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56-57 (Del. 2019).
[38] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385-86 (Del. 2012).
[39] Agreement § 6.7.

12

6.12 likely is a drafting anomaly, but either way, CMP's proffered interpretation accords meaning to all clauses without giving primacy to one sentence over another.

Finally, MTA contends reading Section 6.12 in the manner CMP advocates gives CMP a veto power over all Alberta's corporate transactions or combinations. There are, however, various structures whereby Alberta could have combined with MTA without running afoul of Section 6.12. A reverse triangular merger or other transaction in which Alberta retained its corporate existence likely would not have triggered the anti-assignment clause.

In sum, CMP's motion raises a straightforward issue of contract interpretation. Section 6.12 plainly prohibits assignments, including by operation of law, and that phrase unambiguously includes assignment through merger. MTA's convoluted analysis does not create an ambiguity. Faced with this plain language that its predecessor voluntarily negotiated, MTA's only "hook" is the apparent unfairness of allowing CMP to avoid making a payment it allegedly owes. But it is not this Court's function to save sophisticated contracting parties from an unfair or unanticipated result of their own corporate transactions. The parties could have avoided this result through careful drafting during contract negotiations or by utilizing a different corporate structure when Alberta and MTA combined. Having failed to do so, they are stuck with the results of their bargain.

13

**B.** **Because Section 6.12 is unambiguous, the Court need not undertake the *Star Cellular* analysis.**

Although there may be facial appeal to MTA's argument that the Court should apply the *Star Cellular* test and consider whether the merger subjected CMP to an unreasonable risk of harm, the argument cannot withstand scrutiny. Both *Star Cellular* and *Tenneco* were premised on the Court first finding the anti-assignment clause ambiguous. In *Star Cellular*, the Court found the term "transfer" in an anti-transfer provision within a partnership agreement to have no "generally prevailing meaning," and held that (i) there was an ambiguity as a matter of law, and (ii) the agreement did not expressly include transfer by operation of law in its anti-transfer provision.[40] In *Tenneco*, the Court found an anti-assignment provision to be ambiguous based on tension between the provision's language and the agreement as a whole.[41] Only after concluding there was ambiguity did the Court apply the *Star Cellular* test and hold that the defendant did not identify any possible adverse consequences from a merger.[42] Here, no ambiguity exists, and the parties therefore are bound by the anti-assignment clause's express prohibition against all assignments without the other side's consent.

---

[40] *Star Cellular Telephone Co., Inc.* 1993 WL 294847 at *8.
[41] *Tenneco Auto. Inc. v. El Paso Corp.*, 2002 WL 453930, at *3 (Del. Ch. March 20, 2002).
[42] *Id.*

## CONCLUSION

For the foregoing reasons, Compania Minera Pangea, S.A. de C.V.'s Motion to Dismiss is **GRANTED**. **IT IS SO ORDERED**.