[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 13 2001
THOMAS K. KAHN
CLERK

_____

No. 98-6055
_____

D.C. Docket No. 96-00011-CV-D-N

LARKETTA RANDOLPH, on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

versus

GREEN TREE FINANCIAL CORP. -- ALABAMA and GREEN TREE
FINANCIAL CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 13, 2001)

ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES

Before DUBINA, CARNES and FARRIS*, Circuit Judges.

CARNES, Circuit Judge:

_____
*Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Plaintiff Larketta Randolph filed this putative class action against defendants Green Tree Financial Corp. and Green Tree Financial Corp. -- Alabama (collectively, "Green Tree") for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA"). The district court ordered the parties to proceed to arbitration and dismissed the action with prejudice. In our prior opinion, Randolph v. Green Tree Financial Corp. -- Alabama, 178 F.3d 1149 (11th Cir. 1999), we held that the arbitration agreement in this case defeated the remedial purposes of TILA and was unenforceable because of the potentially high costs to Randolph of pursuing arbitration. The Supreme Court reversed that holding in Green Tree Financial Corp. – Alabama v. Randolph, ___ U.S. ___, 121 S. Ct. 513 (2000).

In doing so, the Supreme Court explicitly "decline[d] to reach [Randolph's] argument that . . . the arbitration agreement is unenforceable on the alternative ground that the agreement precludes [Randolph] from bringing her claims under the TILA as a class action," because we had not passed on that question. Id. at ___, 121 S. Ct. at 523 n.7. In a separate opinion four Justices noted that issue had been properly raised in the district court and in this Court, and observed that the Supreme Court's majority opinion does not preclude us from deciding that issue on remand. Id. at 525 n.4 (Ginsburg, J., joined by Stevens, Souter, and Breyer, JJ.,

2

concurring in part and dissenting in part). We have received supplemental briefing on that issue, but before addressing it we must deal with a threshold issue Randolph raises.

CLASSWIDE ARBITRATION

Randolph's position in this remand is two-fold. First, she maintains she should be permitted to pursue the classwide relief she seeks in the arbitration proceeding itself which, of course, would moot the question of whether her inability to do so renders the arbitration agreement unenforceable. Randolph maintains that classwide arbitration is not foreclosed by the language of the arbitration provision in her contract with Green Tree, and argues that reading a classwide remedy into the agreement would reconcile the Federal Arbitration Act's ("FAA"), 9 U.S.C. § 1 et seq., goal of enforcing arbitration agreements with TILA's scheme of using private class actions as one way to enforce that statute.

The arbitration agreement itself (which is set out in full as Appendix A to this opinion) is silent about whether Randolph may pursue classwide relief in the arbitration proceeding. Randolph argues that silence equates with permission instead of preclusion, that the FAA itself does not forbid classwide arbitration, and that construing the arbitration agreement to authorize classwide relief will avoid unnecessary tension between the FAA and TILA. For authority Randolph points to

3

decisions of state courts in California and Pennsylvania permitting classwide arbitration. See, e.g., Keating v. Superior Court, Alameda County, 167 Cal. Rptr. 481 (Cal. Ct. App. 1980); Dickler v. Shearson Lehman Hutton, Inc., 596 A.2d 860 (Pa. Super. Ct. 1991).

On the other hand, the two federal courts that have addressed this issue have held that classwide arbitration is available only if that remedy is expressly provided for in the parties' arbitration agreement. See, e.g., Champ v. Siegel Trading Co., 55 F.3d 269, 275 (7th Cir. 1995) ("[S]ection 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter."); Gammaro v. Thorp Consumer Disc. Co., 828 F. Supp. 673, 674 (D. Minn. 1993) (refusing to order classwide arbitration of TILA claims where the "arbitration agreement makes no provision for class treatment of disputes" (footnote omitted)). We have not yet spoken to the precise issue, but in Protective Life Insurance Corp. v. Lincoln National Life Insurance Corp., 873 F.2d 281 (11th Cir. 1989), we held that arbitrations may be consolidated only when the arbitration agreement so provides. The reasoning of our Protective Life decision may dictate that we join the Seventh Circuit and the District Court of Minnesota in holding that classwide relief may not be insisted upon in an arbitration proceeding if the agreement is silent on the subject of that type of remedy. Or maybe not. We have

no occasion to decide that today, because Randolph did not properly preserve the issue of whether classwide relief is available in the arbitration proceeding itself.

Randolph initially took the position that the availability of classwide arbitration was an open question in this circuit, but the district court held that our decision in <u>Protective Life</u> ruled out classwide arbitration and that, as a result, "compelling arbitration in this instance will eliminate Plaintiff's ability to arbitrate her claims on behalf of a class."  Randolph apparently found that holding to her strategic liking and came to embrace it.  Instead of urging us to reject that holding, Randolph's first brief on appeal assured us that "[t]here is no provision in the Green Tree contract for a class or consolidation of actions," and told us that the "right" to bring a class action "cannot be duplicated in arbitration."  Having picked that horse, Randolph must continue riding it.

Recently, in another remand from the Supreme Court, we declined to consider an issue that was not raised by the appellant when he was before us initially, citing the "well-established rule that issues and contentions not timely raised in the  briefs are deemed abandoned." <u>United States v. Ardley</u>, ___ F.3d ___ (11th Cir. Feb. 20, 2001).  <u>See</u> <u>also</u> <u>Hartsfield v. LeMacks</u>, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned." (marks and citation omitted)).  A

supplemental brief after remand from the Supreme Court is not a proper place for switching positions and resurrecting arguments abandoned earlier.  We will decide what remains of this case based upon  the district court's previously unchallenged holding, and Randolph's pre-remand position, that the arbitration agreement precludes any type of classwide relief in the arbitration proceeding.

ENFORCEABILITY OF ARBITRATION PROVISIONS  PRECLUDING CLASS ACTION REMEDIES FOR  TILA CLAIMS

That brings us to Randolph's second position, which is that because the agreement she signed does not permit classwide arbitration, it is unenforceable. The issue is whether an arbitration agreement that bars pursuit of classwide relief for TILA violations is unenforceable for that reason.  The two principal decisions bearing upon this issue are Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647 (1991), and Bowen v. First Family Financial Services., Inc., 233 F.3d 1331 (11th Cir. 2000).

In Gilmer, the Supreme Court set out the standards for determining whether a federal statutory claim is subject to arbitration.  The Court stated that "[i]t is now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," and went on to instruct us that:

> Although all statutory claims may not be appropriate for arbitration,
> "[h]aving made the bargain to arbitrate, the party should be held to it

> unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." . . . If such an intention exists, it will be discoverable in the text [of the statute], its legislative history, or an "inherent conflict" between arbitration and the [statute's] underlying purposes.

Gilmer, 500 U.S. at 26, 111 S. Ct. at 1652 (citations omitted). The Gilmer Court also held that the burden is on the party opposing arbitration to show that Congress intended to prevent waiver of a judicial forum in favor of an arbitral forum for the statutory claims. Id. The Court explained that an "inherent conflict" between the policies underlying a federal statute and the enforcement of an agreement to arbitrate claims under that statute does not exist simply because the statute "is designed not only to address individual grievances, but also to further important social policies . . . [because] so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Id. at 27-28, 111 S. Ct. at 1653 (marks and citations omitted).

In light of those Gilmer standards, we addressed in Bowen the issue of whether the text of TILA and its legislative history, or an inherent conflict between TILA and the FAA, would render an arbitration clause unenforceable, and we concluded that they did not. 233 F.3d at 1334 and 1338. Bowen involved claims made under ECOA, 15 U.S.C. 1691, et seq., a necessary premise of which was the

7

proposition "that the TILA grants consumers a non-waivable right to litigate, individually and through a class action, any claims arising under the statute." Id. at 1335. In deciding whether TILA created such a "right," we considered the plaintiffs' arguments about the role of class actions in the TILA enforcement scheme. We acknowledged that the text of TILA specifically contemplates class actions as evidenced by the fact that the statute caps the amount of statutory damages available in a TILA class action. Id. at 1337. The cap on those damages was enacted in order to overcome courts' reluctance to certify TILA class actions in light of the potentially crippling statutory damage awards which might otherwise result. Id. We also considered in Bowen TILA's legislative history "which stresses the importance of class action procedures in the TILA scheme," and which the plaintiffs argued was an indication that "Congress intended to guarantee consumers access to individual lawsuits and class actions to allow them to serve as private attorneys general in enforcing the provisions of the TILA, thereby furthering the policy goals of the statute." Id.

But after discussing TILA's text and legislative history relating to class action remedies in Bowen, we reasoned as follows:

> [W]e recognize, of course, that a class action is an available, important means of remedying violations of the TILA. See 15 U.S.C. § 1640. However, there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any

8

> circumstance. . . . An intent to create such a "blanket right," a non-waivable right, to litigate by class action cannot be gleaned from the text and the legislative history of the TILA.

Id. at 1337-38 (citations and quotations omitted). We said that "[w]hile the legislative history of § 1640 shows that Congress thought class actions were a significant means of achieving compliance with the TILA, . . . it does not indicate that Congress intended to confer upon individuals a non-waivable right to pursue a class action nor does it even address the issue of arbitration." Id. at 1338. We also concluded that the "private attorneys general" aspect of TILA's enforcement scheme did not require a different conclusion. Id.

In light of the Bowen decision and for the reasons set out in our opinion in that case, Randolph cannot carry her burden of showing either that Congress intended to create a non-waivable right to bring TILA claims in the form of a class action, or that arbitration is "inherently inconsistent" with the TILA enforcement scheme. We did say in Bowen that our holding went "no further than the [ECOA] § 1691(a)(3) issue" and "[did] not reach the issue of whether an agreement to arbitrate is unenforceable with respect to TILA claims on the ground that there is an inherent conflict between arbitration and the . . . underlying purposes of the

9

TILA."[1]  Id. at 1338-39 (citations and quotations omitted).  But there is no good reason why our analysis in Bowen of the interplay between arbitration, class actions and TILA in the context of ECOA claims premised on TILA violations does not apply with equal force to pure TILA claims.  Randolph simply repeats the arguments that we considered in Bowen concerning the same statutory text, the same legislative history, and the same policy concerns.  We have already rejected those arguments because they do not establish that Congress intended to preclude the arbitration of TILA claims, even where arbitration would prevent the claims from being brought in the form of a class action.

Our thinking in this respect is consistent with the Third Circuit's decision that "[arbitration] clauses are effective even though they may render class actions to pursue statutory claims under the TILA . . . unavailable."  Johnson v. West Suburban Bank, 225 F.3d 366, 369 (3d Cir. 2000), cert. denied sub nom. Johnson v. Tele-Cash, Inc., ___ S. Ct. ___ (Feb. 20, 2001).  On the way to that conclusion, the court held that nothing in the text of TILA created a non-waivable right to

---

[1]In Bowen, we had no occasion to address whether an arbitration clause precluding class actions was enforceable in the TILA context because we found that the plaintiffs in that case had no standing to pursue their TILA claims.  Id. at 1341.  The basis for this holding was that "there [was] no allegation that [the defendant] ha[d] invoked, or threatened to invoke, the arbitration agreement to compel the plaintiffs to submit any claim to arbitration."  Id. at 1339.  They did have standing to pursue the claim that the defendant's requirement that they sign an arbitration agreement constituted discrimination with respect to a credit transaction in violation of ECOA, and it was that claim that we addressed in Bowen. Id. at 1334-38.

10

bring a class action, and although the plaintiff argued that the legislative history "demonstrates the centrality of class actions to the TILA's effective enforcement," the court held that that history "falls short of demonstrating irreconcilable conflict between arbitration and the TILA." Id. at 371-73. There is no irreconcilable conflict, because the public policy goals of TILA can be vindicated through arbitration, and the statute contains other incentives – statutory damages and attorneys fees – for bringing TILA claims. Id. 373-74. Not only that, but TILA also provides for enforcement by administrative agencies. Id. at 375. For these reasons, the Third Circuit concluded in Johnson, as we have here, that Congress did not intend to preclude parties from contracting away their ability to seek class action relief under the TILA. Id. at 378.

What the Supreme Court said in the present case reinforces our decision. In reversing our earlier decision, the Court emphasized the "liberal federal policy favoring arbitration agreements," which is embodied in the FAA, and noted that it had previously "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Green Tree, ___ U.S. at ___, 121 S. Ct. at 521-22 (citations and quotations omitted). See also Johnson, 225 F.3d at 376 ("Insofar as Congress's intent, broadly contemplated, is concerned, we must give equal

11

consideration to Congress's policy goals in enacting the FAA."). According to the Supreme Court, the last time this case was before us we made the mistake of giving too little weight to the FAA's pro-arbitration policy. We decline to make the same mistake again. Giving full weight to the congressional policy embodied in the FAA, we hold that a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA.

CONCLUSION

The judgment of the district court is AFFIRMED.

APPENDIX A

ARBITRATION: All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s).  This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.  Judgment upon the award rendered may be entered in any court having jurisdiction.  The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.  The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein.  THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).  The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes will be subject to binding arbitration in accord with this Contract.  The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract . . . [including] money damages, declaratory relief, and injunctive relief.  Notwithstanding anything hereunto the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. . . . The initiation and maintenance of an action for judicial relief in a court [on the foregoing terms] shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.