**Gia S. GIPSON, Plaintiff,**

v.

**CROSS COUNTRY BANK, Defendant.**

**No. CIV.A. 03–A–269–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 26, 2003.

---

James N. Walter, Jr., Christopher W. Weller, Wyndall A. Ivey, Capell Howard PC, Montgomery, AL, Jerry L. Thornton, Law Office of Jerry L. Thornton, Hayneville, AL, George C. Douglas, Jr., Campbell & Douglas, Sylacauga, AL, for Gia S. Gipson, individually and on behalf of all other personal credit card holders of the Defendant who are similarly situated, plaintiff.

Robert H. Rutherford, Burr & Forman LLP, Birmingham, AL, Alan S. Kaplinsky, Mark J. Levin, Martin C. Bryce, Jr., Arleigh P. Helfer, III, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Cross Country Bank, defendant.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This matter is before the court on competing motions regarding the enforcement of an arbitration provision. Defendant Cross Country Bank filed a Motion to Compel Arbitration And Stay All Proceedings Pending Completion of Arbitration (Doc. # 2) on May 11, 2003. Plaintiff Gia S. Gipson filed a Motion For Jury Trial On The Issue of Arbitrability on May 16, 2003 (Doc. # 12).

The Plaintiff originally filed a Complaint (Doc. # 1) in this case in the Circuit Court for Lowndes County, Alabama on February 10, 2003, claiming that certain terms and conditions for Cross Country's credit card issued to the Plaintiff and others violated a section of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666(c) and regulations issued thereunder. The complaint seeks class action treatment. Cross Country removed the case to this court on March 11, 2003 (Doc. # 1). Cross Country contends that the Plaintiff is required by contract to submit her claims to arbitration and, therefore, has filed a motion to compel arbitration and to stay these proceedings. Furthermore, included in the Motion to Compel, Cross Country argues that classwide relief is prohibited by the arbitration agreement and moves to dismiss the Plaintiff's class action allegations as moot. The Plaintiff opposes Cross Country's motion on numerous grounds and requests a jury trial on the issue of whether the parties agreed to arbitrate her claims.

For reasons to be discussed, Cross Country's Motion to Compel Arbitration And Stay All Proceedings Pending Completion of Arbitration is due to be GRANTED and the Plaintiff's Motion For Jury Trial On The Issue Of Abitrability is due to be DENIED.

## II. FACTS

In 2002, the Plaintiff, Gia S. Gipson, applied for a Visa credit card through Cross Country Bank. *See* Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit E, ¶ 4. Subsequently, Cross Country approved the Plaintiff's application and sent her a Visa card along with a Credit Card Agreement ("Agreement"). *Id.* The Agreement provides that "[i]f you do not agree to abide by the terms in this Agreement, you must

terminate your Account, in the manner provided in this Agreement, before you attempt to obtain the first Cash Advance or Purchase on your Account or otherwise use your Account." *Id.* at Exhibit (E)(1). The parties do not dispute the fact that the Plaintiff made purchases with her Visa card and failed to reject the terms of the Agreement.

The Agreement also contains an arbitration clause that states the following: "If you or we elect to arbitrate a Claim, you will not have the right to pursue that Claim in court or have a jury decide the Claim." *Id.* Additionally, the arbitration clause prohibits the maintenance of any class actions:

> If you or we elect to arbitrate a Claim: (1) neither you nor anyone else on your behalf can pursue that Claim in court or in an arbitration proceeding on a class-wide or representative basis; and (2) Claims brought by or against one account holder (or joint account holders) may not be brought together with Claims brought by or against another account holder.

*Id.* With regard to the costs of arbitration, the Agreement provides:

> If you cannot afford to pay the fees charged by the Administrator and the arbitrator or if you believe that such fees are too high, we will consider any reasonable written request by you for us to pay the fees. We will pay any fees or expenses we are required to pay by law. You will never be required to pay us any fees we have previously paid to the Administrator. Each party must bear the

expense of that party's attorneys, experts and witnesses, regardless of who wins the arbitration, except to the extent that applicable law or the Administrator's Rules provide otherwise.

*Id.*[1]

In her Affidavit, the Plaintiff admits that she applied for and received a Visa card from Cross Country, but states that "no one from Cross Country mentioned anything about arbitration ... or gave me any written materials which called my attention to arbitration as a condition of Cross Country's issuing a card to me." *See* Plaintiff's Opposition (Doc. # 11), Exhibit A, ¶ 2. Moreover, the Plaintiff "did not know about any arbitration provisions in [her] agreement with Cross Country until" her lawyers pointed it out to her. *Id.* at ¶ 4.

## III. *DISCUSSION*

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party to an enforceable arbitration agreement fails to arbitrate a dispute that falls within the scope of the agreement, the aggrieved party may petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the

---

**1.** The Agreement defines "Administrator" as "the National Arbitration Forum, the American Arbitration Association, or JAMS. These companies administer arbitration proceed-ings." *See* Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit (E)(1).

parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* However, if "the making of the arbitration agreement" is a disputed issue, the court must first adjudicate whether the agreement is enforceable against the parties. *Bess v. Check Express,* 294 F.3d 1298, 1304 (11th Cir.2002).

In the present case, the Plaintiff contests the enforceability of Cross Country's arbitration clause on the grounds that she never agreed to arbitrate her claims. Even assuming that she did assent to the arbitration clause, the Plaintiff argues that the clause is unenforceable as a matter of law for three reasons. First, the Plaintiff contends that the Agreement's unilateral amendment provision renders the entire agreement illusory. Second, the Plaintiff argues that the arbitration clause is unenforceable because it limits the statutory remedies available to her under the Fair Credit Billing Act. Third, the Plaintiff contends that the arbitration clause is unconscionable under Alabama law. The court will discuss each of these arguments separately. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").

### A. *Plaintiff's Assent to Arbitration Agreement*

Although Congress has declared a national policy in favor of arbitration, the policy underlying the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Accordingly, the FAA permits a person seeking to avoid arbitration to request a jury trial on the issue of assent. *See* 9 U.S.C. § 4 (stating that "[i]f the making of the arbitration agreement ... be in issue, the party alleged to be in default may ... demand a jury trial of such issue"). In deciding whether a jury trial is warranted, the Eleventh Circuit has explained that the party seeking to avoid arbitration must "unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814, 818 (11th Cir.1993) (quoting *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 854 (11th Cir.1992)). More specifically, the challenging party must create a genuine issue of fact by presenting the court "with enough evidence to make the denial colorable." *Chastain,* 957 F.2d at 855.

In this case, the Plaintiff's only basis for challenging her assent to the arbitration clause is her argument that no one from Cross Country "called [her] attention to any waiver of legal rights or remedies or the arbitration of disputes in connection with" her Visa card. *See* Plaintiff's Opposition (Doc. # 11), Exhibit A, ¶ 3. In other words, the Plaintiff does not deny receiving the Agreement with her Visa card or assenting to its terms through the use of her Visa card; rather, she bases her argument on the fact that the arbitration clause was not sufficiently highlighted to draw her attention to it. This argument is unpersuasive because "arbitration clauses need not be specially marked or singled out in some way from the other provisions."[2] *See Rollins Inc. v. Foster,* 991 F.Supp. 1426, 1434 (M.D.Ala.1998); *see*

---

**2.** The Plaintiff seemingly ignores the fact that the second paragraph of the Agreement states

*also Nobles v. Rural Community Ins. Services,* 122 F.Supp.2d 1290, 1300 (M.D.Ala. 2000) (stating that "courts cannot single out arbitration clauses for discriminatory treatment"). Indeed, to hold otherwise would violate the Supreme Court's conclusion that the FAA precludes "States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (internal quotations omitted) (holding that the FAA preempts a Montana statute that declared an arbitration clause unenforceable unless the contract contains underlined capital letters on the first page of the contract stating that it contains an arbitration provision). Because the Plaintiff has not presented the court with sufficient evidence to create a question of material fact on the issue of whether she assented to the arbitration provision in the Agreement, the Plaintiff's Motion For A Jury Trial On The Issue of Arbitrability is due to be DENIED.

### B. *Change of Terms Provision*

Having concluded that the Plaintiff agreed to arbitrate her claims, the court must next consider "whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims." *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346. The Plaintiff initially argues that the entire Agreement, including the arbitration clause, is unenforceable because the Agreement's amendment provision permits Cross Country to

alter the contract's terms unilaterally. As explained below, however, this argument is more appropriately directed to the arbitrator instead of to this court.

■ In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court held that arbitration clauses are separable from the contracts in which they are included. *See id.* at 402–04, 87 S.Ct. 1801. According to the "doctrine of separability," the Court explained that "a claim of fraudulent inducement of the contract generally was a matter to be resolved by the arbitrator, whereas a claim that the arbitration clause itself was fraudulently induced would be for the court to decide because such a claim put the making of the arbitration agreement in issue." *John B. Goodman Ltd. Partnership v. THF Const., Inc.,* 321 F.3d 1094, 1095–96 (11th Cir.2003) (per curiam). In other words, federal courts confronted with motions to compel arbitration are only authorized to address "issues relating to the making and performance of the agreement to arbitrate" itself, not general challenges to contract as a whole. *Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801; *John B. Goodman,* 321 F.3d at 1096.

■ Given *Prima Paint*'s holding, the central question for this court is whether the Plaintiff's argument regarding the illusory nature of the entire Agreement places "the making of the arbitration agreement in issue." *Bess,* 294 F.3d at 1304. The Plaintiff contends that the "making of the arbitration agreement" is at issue, and the arbitration clause cannot be enforced, be-

---

the following in bold face type: "THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT MAY SUBSTANTIALLY LIMIT OR AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY AND KEEP IT FOR YOUR RECORDS." *See* Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit (E)(1).

cause the Agreement as a whole was void *ab initio* due to the inclusion of the amendment provision. This argument, however, was expressly rejected by the Eleventh Circuit in *Bess v. Check Express*, 294 F.3d 1298 (11th Cir.2002).

In *Bess*, the plaintiffs alleged that "check advances" or "deferred payment transactions" by the defendants were actually loans at usurious interest rates in violation of state and federal law. *Id.* at 1300–01. After the defendants moved to compel arbitration, the plaintiffs argued that the arbitration provisions contained in their contracts could not be enforced because the contracts related to illegal financial transactions under Alabama law; thus, the contracts were void *ab initio*. *See id.* at 1301–02. The Eleventh Circuit rejected this argument and held that the issue of whether the deferred payment transactions were illegal was for the arbitrator, not the court, to decide. *Id.* at 1306. In reaching this conclusion, the court emphasized that the plaintiffs in *Bess* were challenging the "*content* of the contracts, not their *existence*." *Id.* at 1305 (emphasis in original). In other words, the plaintiffs were not challenging the contracts on the grounds that they failed to assent to their terms; instead, they argued that the arbitration provisions could not be enforced because other provisions in the contracts rendered the contracts unenforceable as a

whole under Alabama law. *Id.* at 1305. Because the plaintiffs' challenge had nothing to do with whether they assented to the contracts or the substantive validity of arbitration provisions, the court concluded that the "making of the arbitration agreement" was not at issue. *See id.* at 1306.

Similar to *Bess*, the Plaintiff raises a substantive challenge to the terms of a contract that is unrelated to the "making of the arbitration agreement." More specifically, the Plaintiff contends that the illusory nature of the amendment provision renders the entire Agreement, as well as the arbitration clause, unenforceable as a matter of law. This argument does not "place the making of the arbitration agreement in issue" because it only relates to the substantive content of the amendment provision, and does not challenge either the Plaintiff's assent to the contract or the substance of the arbitration clause.[3] Therefore, pursuant to *Bess*, the court concludes that it does not have the authority under 9 U.S.C. § 4 to address the Plaintiff's illusory contract argument. This argument "is one for the arbitration panel, not the district court." *John B. Goodman*, 321 F.3d at 1097.

### C. Limitation on Federal Statutory Remedies

Next, the Plaintiff argues that the arbitration clause's prohibition on class actions

---

**3.** The court emphasizes that it can consider the Plaintiff's external legal challenges to the arbitration clause as well as her contention that the she did not assent to the arbitration clause because these arguments "place the making of the arbitration agreement in issue." *Bess*, 294 F.3d at 1306 ("Because these contentions place in issue the enforceability of the arbitration agreement itself, they are to be decided by the court rather than by the arbitrator."); *see Rollins v. Foster*, 991 F.Supp. 1426, 1431 (M.D.Ala.1998) (stating that sec-

tion 4 of the FAA "permits a federal court to hear only claims involving forgery, mutual mistake, unconscionability, and impossibility as to the arbitration clause itself"); *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir.1998), *cert. denied* 525 U.S. 1068, 119 S.Ct. 796, 142 L.Ed.2d 659 (1999) (holding that a court must decide whether an "arbitration clause lacks mutuality of obligation, is unconscionable, and violates public policy" because these issues "go to the making of the arbitration agreement itself").

renders the entire clause unenforceable as a matter of law because it limits the remedies that are available to her under the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq.

◼ "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346. Nevertheless, the "fact that Congress has enacted a statute which creates substantive rights and provides judicial remedies to vindicate those substantive rights does not mean it has created a non-waivable, substantive 'right' to judicial redress." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000). Within the arbitration context, the Supreme Court has explained that a party who has agreed to arbitrate a federal statutory claim "should be held to it unless Congress itself has evidenced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Accordingly, the question for this court is whether Congress intended to preclude parties from contracting away their ability to seek class action relief under the Fair Credit Billing Act. *See Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 817 (11th Cir.2001).

◼ In this case, the Plaintiff cannot carry her burden of showing that "Congress intended to create a non-waivable right to bring [FCBA] claims in the form of a class action, or that arbitration is 'inherently inconsistent' with the [FCBA] enforcement scheme." *Id.* at 818. In reaching this decision, the court notes that

the FCBA, 15 U.S.C. § 1666 to 1666j, is one of several discrete federal statutes included in the larger Truth In Lending Act, 15 U.S.C. § 1601 et seq. *See American Express Co. v. Koerner*, 452 U.S. 233, 235, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981) (stating that the "Fair Credit Billing Act added a number of provisions to the Truth In Lending Act"). Although the FCBA itself does not expressly authorize an injured party to bring a class action, plaintiffs asserting FCBA claims can seek classwide relief pursuant to the TILA's general civil liability provision. *See* 15 U.S.C. § 1640(a)(2)(B) (stating that "any creditor who fails to comply with the requirements imposed under ... Part D ... of this subchapter [,the FCBA,] with respect to any person is liable to such person in an amount equal to the sum of ... in the case of a class action, such amount as the court may allow ..."). Consequently, the court must determine whether Congress has evidenced an intention to preclude a waiver of the class action rights available to plaintiffs seeking relief under 15 U.S.C. § 1640. The court's analysis of this question is guided by *Randolph v. Green Tree Fin. Corp. Alabama*, 244 F.3d 814, 819 (11th Cir.2001), a case in which the Eleventh Circuit expressly held that Congress did not intend for section 1640 to create a non-waivable right to bring class action claims.

In *Randolph*, the court considered "whether an arbitration agreement that bars pursuit of classwide relief for TILA violations is unenforceable for that reason." *Id.* at 816. After reviewing section 1640's text and legislative history regarding class action remedies, the court determined that "Congress did not intend to preclude parties from contracting away their ability to seek class action relief under the TILA." *Id.* at 818. Accordingly, the court held that "a contractual provision

to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Id.* at 819.

Based on the Eleventh Circuit's reasoning in *Randolph,* this court similarly concludes that Cross Country's arbitration clause is enforceable even though it prohibits the Plaintiff from seeking classwide relief for her Fair Credit Billing Act claim. Although *Randolph*'s specific holding only applied to class action bans for "pure TILA claims," the court concludes that "there is no good reason why the [Eleventh Circuit's] analysis ... of the interplay between arbitration, class actions and TILA in the context of [pure TILA claims] does not apply with equal force to [FCBA claims,]" especially given the fact that both statutes rely on the same remedial statutory provision, 15 U.S.C. § 1640. *Id.* at 818.

■■■ The Plaintiff's attempt to distinguish *Randolph* is unpersuasive. The Plaintiff contends that *Randolph* was not decided under the factual showing that the high costs of proceeding individually would prevent a plaintiff from vindicating her rights under a federal statute. Nevertheless, the Eleventh Circuit has explained that the party seeking to avoid arbitration on the basis of high costs must "demonstrate that [s]he faces such 'high costs' if compelled to arbitrate [her] claim ... that [s]he is effectively precluded from vindicating [her federal statutory] rights in the arbitral forum." *Musnick v. King Motor Co.,* 325 F.3d 1255, 1260 (11th Cir.2003). In this case, the costs that the Plaintiff finds objectionable are her attorneys' fees relative to the potential amount of individual recovery, not the costs associated with litigating her case in the arbitral forum. "The appropriate inquiry is one that evaluates whether the arbitral forum in a par-

ticular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id.* at 1259 (quoting *Bradford v. Rockwell Semiconductor Systems Inc.,* 238 F.3d 549, 556 (4th Cir. 2001)). The Plaintiff has not presented any evidence to suggest that the costs associated with litigating her case in the arbitral forum are any more prohibitive than the costs of litigating her case in a judicial forum. Moreover, the costs of litigating her case through arbitration may actually be less than in court. If the Plaintiff litigates her FCBA claims in court, she would have to pay an up-front filing fee to initiate her suit. If forced to arbitrate, the possibility exists that she would not have to pay anything at all. This conclusion is supported by the fact that Cross Country's arbitration clause states that Cross Country "will consider any reasonable written request by you for us to pay the fees" as well as "pay any fees or expenses we are required to pay by law." *See* Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit (E)(1). Although such a provision could impose additional costs on the Plaintiff if Cross Country denies the Plaintiff's request, the Eleventh Circuit has explained that similar types of contingent cost-shifting provisions are simply "too speculative" to invalidate an otherwise enforceable arbitration provision:

> At this point Plaintiff has not been assessed with any fees, nor is it certain that he ever will be. Given these facts, we cannot conclude that the arbitration agreement constitutes a barrier to vindi-

cation of Plaintiff's rights. Plaintiff's speculation about prohibitive costs is just that—speculation; this is not enough to invalidate an otherwise enforceable arbitration provision.

*Musnick*, 325 F.3d at 1259–60 (quoting *Goodman v. ESPE America, Inc.*, 84 Fair Empl. Prac. Cas. 1629, 1629 (E.D.Pa. 2001)).[4]

In the end, Cross Country's arbitration clause does not limit any of the substantive remedies that would otherwise be available to the Plaintiff under 15 U.S.C. § 1640.[5] The only procedural limitation Cross Country imposes is a ban on class actions. However, as explained above, the Eleventh Circuit has held that such a prohibition is "enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Randolph*, 244 F.3d at 819. Therefore, the court concludes that Cross Country's arbitration provision does not prohibit the Plaintiff from vindicating her statutory rights under either TILA or FCBA.

### D. *Unconscionability*

Finally, the Plaintiff argues that the arbitration clause is unenforceable because the class action prohibition is unconscionable under Alabama law. Before addressing the substance of this argument, the court notes that this issue potentially presents a difficult choice-of-law question. Cross Country argues that Delaware law governs the unconscionability inquiry due to the existence of a choice-of-law provision in the Agreement. *See* Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit (E)(1) ("This Agreement and your Account will be governed by, and interpreted under Federal law and the laws of the State of Delaware without reference to the principles of conflict of laws."). Conversely, the Plaintiff contends that Alabama law should govern because the application of Delaware law would be contrary to the laws and policy of Alabama. Although the court found the parties' supplemental briefs on the choice-of-law issue helpful, the court need not reach a decision on this issue because, even assuming that Alabama law governs, the court concludes that Cross Country's arbitration provision is not unconscionable.[6]

 Under Alabama law, an "unconscionable contract or contractual provision

---

4. The court emphasizes that "[o]nce the arbitrator has reached the issues of costs and fees, those items will no longer be speculative, and any issue presented thereby will be ripe for decision." *Musnick*, 325 F.3d at 1262. Should the Plaintiff eventually have to pay fees and costs, she can petition this court for judicial review of the arbitrator's decision. *Id.*

5. The court notes that the Agreement provides that arbitration will be conducted in accordance the "Administrator's Rules." According to JAMS' policy regarding the minimum standards for arbitration procedures, "remedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause." *See* Plaintiff's Opposition (Doc. # 11), Exhibit B. Moreover, the Nation-

al Arbitration Forum's "Arbitration Bill of Rights" explains that the "remedies resulting from an arbitration must conform to the law." *Id.* Finally, the American Arbitration Association's "Consumer Due Process Protocol" provides that the "arbitrator should be empowered to grant whatever relief would be available in court under law or in equity." *Id.* Given these three provisions, the court concludes that the Plaintiff will not forego any of her substantive recovery rights under 15 U.S.C. § 1540 by arbitrating her claim.

6. This conclusion would not be any different if the court applied Delaware law. Delaware courts have held that class action prohibitions in arbitration clauses are not unconscionable. *See Edelist v. MBNA America Bank*, 790 A.2d 1249, 1260–61 (Del.Super.Ct.2001); *Lloyd v. MBNA America Bank, N.A.*, No. 00–109, 2001

is defined as a contract or provision such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Sears Termite & Pest Control, Inc. v. Robinson*, No. 1020304, 2003 WL 21205646, at *5 (Ala. May 23, 2003) (internal citations and quotations omitted). When analyzing whether a contract is unconscionable, the Alabama Supreme Court has explained that courts should focus on two essential elements: "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *American General Finance, Inc. v. Branch*, 793 So.2d 738, 748 (Ala.2000).

■ In this case, the Plaintiff argues that the arbitration clause's ban on class actions is so patently unfair and unreasonable as to be unconscionable. More specifically, the Plaintiff contends that she "would not be able to pursue this case as an individual claim because she would be unable to pay [her attorneys' fees], and the value of her individual case would not be sufficiently large to be represented under a contingency fee arrangement." *See* Plaintiff's Brief In Opposition (Doc. # 10), p. 10. In support of this position, the Plaintiff has submitted affidavits from several attorneys who state that "the amount and cost of attorney time that would be required to competently handle the matter, whether by arbitration or lawsuit, would far exceed the value of any potential indi-

vidual recovery whether the case was handled on an hourly or percentage (contingent) basis." *See* Plaintiff's Opposition (Doc. # 11), Exhibit C, ¶ 7. Due to the economic infeasibility of litigating the Plaintiff's FCBA claim on an individual basis, these attorneys conclude that the only practical method the Plaintiff has to pursue her claims is through a class action on behalf of all credit card holders. *See id.*, ¶ 12. If the case proceeds as a class action, the potential value of the claim would be large enough to warrant the anticipated legal time and costs involved in handling the case. *See id.*, ¶ 11.[7]

This argument is unpersuasive because the Plaintiff ignores the fact that the FCBA's remedial statute, 15 U.S.C. § 1640(a)(3), provides that a creditor shall be liable to the plaintiff "in a successful action" for an amount equal to the "costs of the action, together with a reasonable attorney's fee."[8] *See Snowden v. Check-Point Check Cashing*, 290 F.3d 631, 638–39 (4th Cir.2002) (relying on existence of section 1640 in rejecting argument that class action prohibition in arbitration clause is unconscionable because plaintiff "will be unable to maintain her legal representation given the small amount of her individual damages"). The thrust of the Plaintiff's contention is that neither she nor any reasonable attorney has any economic incentive to purse this case as an individual action because the litigation costs' and at-

---

WL 194300, at *4 (D.Del. Feb. 22, 2001), *aff'd* 27 Fed.Appx. 82, 84–85, 2002 WL 21932, at *2 (3d Cir.2002).

7. For example, one attorney states that the "potential value of the claim must, in my opinion, be in excess of $65,000 before a competent and experienced lawyer would consider undertaking this case on a contingent fee basis." *See* Plaintiff's Opposition (Doc. # 11), Exhibit D, ¶ 11.

8. The Plaintiff would be entitled to this in arbitration, since the arbitration clause here provides that "[e]ach party must bear the expense of that party's attorneys, experts, and witnesses, regardless of who wins the arbitration, EXCEPT to the extent that applicable law ... provide[s] otherwise." Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit E, (emphasis added).

torneys fees would exceed any potential recovery. This argument is based on the erroneous assumption that her costs and attorney's fees will be paid from her damage award. This is simply not the case. If the Plaintiff's claim is successful, Cross Country will pay the Plaintiff's attorneys' fees and costs; the Plaintiff will not have to forego any of her damages in order to compensate her lawyers. *See Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) ("Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel.").

The Supreme Court has explained that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)). This concern, however, is not present in an individual suit seeking damages under statutory provisions that provide prevailing plaintiffs with multiple damages, costs and attorneys' fees, because the existence of these remedies provides parties and lawyers with incentives to pursue their cases.[9] *See*

*Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1025 (11th Cir.1996) ("[A]lthough the district court stated that class treatment may be the 'only feasible method of adjudication, given the small size of each member's claims,' ... we note that even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs."); *see also Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1365–66 (5th Cir.1979) ("As a practical matter, the award of attorneys' fees is a critical and integral part of [the TILA]. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attorney. Allowance of attorney's fees in a successful action makes legal representation available in a manner analogous to the contingent fee system.").[10] Indeed, the central purpose behind statutory attorneys fees is to encourage lawyers to accept cases in which damages may be small or nominal. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes is to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws."). Al-

---

9. With regard to damages in individual actions, section 1640 permits a plaintiff to recover "twice the amount of any finance charge in connection with the transaction" up to $1000 and not less than $100. 15 U.S.C. § 1640(a)(2)(A).

10. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

though the Plaintiff and her lawyers may be unwilling to litigate this case due to the fact that it may not provide them with enough financial incentive to justify their efforts, this court cannot conclude that either the Plaintiff or her attorneys are so lacking in economic incentive to warrant a finding that Cross Country's class action prohibition is unconscionable.[11] *See Johnson v. West Suburban Bank*, 225 F.3d 366, 374 (3d Cir.2000) (holding that an arbitration clause that prohibited class actions would "not necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors" because attorneys fees are recoverable under the TILA and "would therefore appear to be recoverable in arbitration").

Notwithstanding the Plaintiff's argument to the contrary, this conclusion does not conflict with *Leonard v. Terminix International Co.*, 854 So.2d 529 (Ala.2002). In *Leonard*, the Alabama Supreme Court addressed whether an arbitration clause that precluded class actions was uncon-

scionable under Alabama law where the monetary value of the plaintiff's claim was so small that a class action presented the only way for the plaintiff to obtain relief. *Id.* at 535. The plaintiffs brought a tort action worth "less than $500" yet faced the following costs pursuant to the arbitration agreement: "1) a $500 arbitration filing fee; (2) a minimum $150 administrative fee per party; (3) an administrative fee of $150-$250 per day per party for each hearing date; (4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the cost of the charge for a meeting room; and (6) the cost of an attorney." *Id.*[12] Based on this disparity, the court held that the arbitration agreement was unconscionable because it restricted the plaintiffs "to a forum where the expense of pursuing their claim far exceeds the amount in controversy." *Id.* at 539.

*Leonard* is distinguishable from the present case for several reasons. First, Cross Country's arbitration agreement permits the Plaintiff to request that Cross

---

**11.** Even if this case were certified as a class action with respect to both actual and statutory damages, the court fails to see how the Plaintiff has any more financial incentive to litigate this case. With respect to statutory damages, 15 U.S.C. § 1640(a)(1)(B) provides that the total recovery "shall not be more than the less of $500,000 or 1 per centum of the net worth of the creditor." Because the Plaintiff has requested class certification on a nationwide basis, the Plaintiff's potential $500,000 statutory award would be spread across a tremendously large group of Cross Country cardholders, thus resulting in a de minimis financial recovery for the Plaintiff. *See Johnson v. West Suburban Bank*, 225 F.3d 366, 374 (3d Cir.2000) ("Indeed, individual plaintiff recoveries in a [TILA] class action may be lower than those possible in individual suits because the recovery available under TILA's statutory cap on class recoveries is spread over the entire class."). Although the Plaintiff correctly argues that section 1640 also allows recovery for actual damages, the

Plaintiff incorrectly assumes that actual damages will provide a financial windfall to her. Actual damages are designed to compensate persons for individualized harm that they have suffered. *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir.2001) (en banc) ("[A]ctual damages ensure that consumers who have suffered actual harm ... can be fully compensated."). Therefore, regardless of whether the Plaintiff brings this case as a class action or an individual action, her actual damages will be the same.

**12.** Although the arbitration clause at issue in *Leonard* was "silent as to who must pay the arbitration costs[,]" the court based its holding on the assumption that the plaintiffs would be required to pay the full amount. *See Leonard*, 854 So.2d at 541 (See, J., dissenting) ("[T]he majority accepts on its face the Leonards' assertion that the arbitration clause in this case requires them to pay prohibitively high arbitration costs....").

Country advance any filing, administrative and hearing fees. Therefore, unlike *Leonard*, the Plaintiff may not have to pay any money out of her own pocket to initiate the arbitration proceeding. Second, the Plaintiff has brought suit under a federal statute that awards costs and attorneys fees should she assert a successful claim. Unlike the plaintiffs in *Leonard*, the Plaintiff need not worry about having her damages reduced by the amount of her costs or attorneys fees. Third, *Leonard* was based in part on the fact that the arbitration clause barred the plaintiff from recovering "indirect, special, or consequential damages." *Id.* at 531. Here, Cross Country's arbitration clause does not limit any of the substantive remedies available to the Plaintiff under 15 U.S.C. § 1640. As a result of these significant factual differences, the court concludes that *Leonard*'s holding is not applicable to this case.

In sum, the court finds that Cross Country's arbitration clause's prohibition on class actions is not unconscionable under Alabama law. Because the arbitration clause does not limit the Plaintiff's right to recover costs and attorneys fees under 15 U.S.C. § 1640, the court rejects the argument that she has no economic incentive to pursue her claim on an individual basis.

This court reached the same conclusion in a recent case involving another statute included in the Truth In Lending Act, the Equal Credit Opportunity Act, 15 U.S.C. § 1691. *See Pitchford v. AmSouth Bank*, 285 F.Supp.2d 1286 (M.D.Ala.2003).

## IV. *CONCLUSION*

For the reasons stated above, the court reaches the following conclusions: 1) the Plaintiff agreed to arbitrate her claims with Cross Country, and 2) Cross Coun-

try's arbitration agreement is enforceable as a matter law. Accordingly, the Plaintiff's Motion For Jury Trial On The Issue of Arbitrability (Doc. # 15) is due to be DENIED, and the Cross Country's Motion to Compel Arbitration and Stay All Proceedings Pending Completion of Arbitration is due to be GRANTED.

Furthermore, as to Cross Country's Motion to Dismiss The Class Allegations As Moot, this Motion is also due to be GRANTED, since the court is now required by 9 U.S.C. § 4 to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." The agreement specifically provides that "neither [the Plaintiff] nor anyone else on [her] behalf can pursue [her] claim ... in an arbitration proceeding on a class-wide basis ..." Defendant's Memorandum in Support of Motion to Compel (Doc. # 4), Exhibit E.

A separate Order will be entered in accordance with this Memorandum Opinion.

### *ORDER*

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED as follows:

1) All issues in this case having been fully briefed, Plaintiff's Motion for Leave to File Response to Cross Country's Reply Brief or, in the Alternative, for Oral Argument (Doc. # 21), is DENIED.

2) Cross Country's Motion To Motion to Compel Arbitration and to Stay All Proceedings Pending Completion of Arbitration, and Motion To Dismiss Class Allegations as Moot (Doc. # 2) is GRANTED.

3) Plaintiff's Motion For Jury Trial On The Issue of Arbitrability (Doc. # 12) is DENIED.

4) Plaintiff is ORDERED to submit her individual claims against Cross Country to binding arbitration in accordance with the arbitration clause in the Cross Country Bank Credit Card Agreement.

5) Because there are no additional defendants in this case, this case is STAYED pending arbitration pursuant to 9 U.S.C. § 3.

6) The clerk of the court is DIRECTED to close this action for statistical purposes, but the parties may request reinstatement at any time that they require the court's intervention.

7) The parties are DIRECTED to file a notice with the court when arbitration has been concluded.